IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT PAUL NYITRAY, JR., | ) | |
| | ) | CASE NO. 5:15CV1792 |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL | ) | KENNETH S. McHARGH |
| SECURITY ADMINISTRATION, | ) | |
| | ) | REPORT & RECOMMENDATION |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule 72.2(b).  The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Robert Nyitray, Jr.'s ("Plaintiff" or "Nyitray") application for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. 416(i) and 423, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Magistrate Judge recommends that the decision of the Commissioner be AFFIRMED.

## I.  PROCEDURAL HISTORY

Plaintiff filed an application for Disability Insurance benefits on June 24, 2014, alleging disability due to Post-Traumatic Stress Disorder and neck injury spinal fusion, with an alleged onset date of September 18, 2013.   (Tr. 65). The Social Security Administration denied Plaintiff's application on initial review and upon reconsideration.  (Tr. 65-82, 84-100).

Plaintiff requested that an administrative law judge ("ALJ") convene a hearing to evaluate his application.  (Tr. 111-12).  On March 30, 2015, an administrative hearing was

convened before Administrative Law Judge Thomas A. Ciccolini ("ALJ").  (Tr. 36-64). Plaintiff appeared, unrepresented by counsel, and testified before the ALJ.  (*Id.*).  A vocational expert ("VE"), Lynn Smith, also appeared and testified.  (*Id.*).  On May 18, 2015, the ALJ issued a decision finding Plaintiff was not disabled.  (Tr. 14-30).  After applying the five-step sequential analysis,[1] the ALJ determined Plaintiff retained the ability to perform work existing in significant numbers in the national economy.  (*Id.*).  Subsequently, Plaintiff requested review of the ALJ's decision from the Appeals Council.  (Tr. 4-6).  The Appeals Council denied his request for review, making the ALJ's April 27, 2015, determination the final decision of the Commissioner. (Tr. 1-3).  Plaintiff now seeks judicial review of the ALJ's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability."  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1)     If a claimant is doing substantial gainful activity–i.e., working for profit–she is not disabled.

(2)     If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3)     If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4)     If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5)     Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

## II.  EVIDENCE

### A.   Personal Background Information

Plaintiff was born on July 28, 1976, and was 37 years old on the alleged onset date, and 38 years old on the hearing date.  (Tr. 45, 65).  Plaintiff completed two years of college plus police officer training academy, and is able to read, write, and communicate in English.  (Tr. 181).  Plaintiff served in the military, and has past work experience as an account executive, a district and field sales manager, and a police officer.  (Tr. 159, 181).  Plaintiff is married and has three children, ages two, five, and ten.  (Tr. 45).

### B.  Medical Evidence[2]

Dr. Black

Treatment notes from Crystal Clinic Orthopaedic Center from March 1, 2013 to July 1, 2013, recorded a past medical history including anxiety.  (Tr. 258, 265, 271, 285, 293).  On October 16, 2013, Plaintiff saw Ross R. Black II, MD, for a physical examination related to acute recurrent sinusitis, abnormal liver function tests, and contraceptive counseling and prescriptions.  (Tr. 356-57).  At this examination, treatment notes showed a medical history including depression and post-traumatic stress disorder, and current medications listed drugs used to treat depression and anxiety disorders, specifically Venlafaxine and Seroquel.  (Tr. 356).  Plaintiff again saw Dr. Black on March 20, 2014, noting a depression screening including that he lost three jobs in the past year, was experiencing more agitation and worse sleeping.  (Tr. 358).  Plaintiff reported he was working with the VA (up to 80% disability) and Wounded Warrior Project, had increasing agitation and needed counseling and therapy three times a week, and fell

---

[2] The following recital of Plaintiff's medical record is an overview of the medical evidence pertinent to Plaintiff's appeal.  It is not intended to reflect all of the medical evidence of record.  As Plaintiff's assignments of error refer to his mental abilities, the medical evidence summary focuses on his records relevant to his mental health.

asleep with Seroquel but was groggy in the mornings.  (*Id.*).  In addition to some unrelated physical diagnoses, Dr. Black diagnosed Plaintiff with PTSD, depressed affect, and anxiety, and amended his medication to stop Seroquel and start taking Abilify.  (Tr. 358-60).  Dr. Black noted Plaintiff was quite animated and agitated during the appointment, and determined on physical examination that he had "unemployable status and needs aggressive psychotherapy."  (Tr. 358-59).

Plaintiff next visited Dr. Black on April 1, 2014, due to a finger contusion following an injury while playing hockey.  (Tr. 361-62).  His history of depression and PTSD, as well as his use of Venlafaxine and Abilify, were again noted, with no modifications.  (*Id.*).  He returned on April 21, 2014, documented as a six month follow-up, and reported better sleep with Abilify, better mood and energy in the morning, but that he was not hungry in the mornings.  (Tr. 363).  Plaintiff also reported to Dr. Black that he played some hockey, and answered "No" when asked during a depression screening if he had, in the prior two weeks, experienced little interest or pleasure in doing things, or feelings of being down, depressed, or hopeless.  (*Id.*).  Dr. Black assessed Plaintiff with PTSD and depressed affect, and his current medications were noted without modification to any mental health related treatment.  (Tr. 363-64).

In an opinion letter dated May 5, 2014, Dr. Black stated that Plaintiff suffers from significant PTSD and depression with anxiety.  (Tr. 367).  Dr. Black went on that Plaintiff has multiple, continuing difficulties focusing and functioning in a work environment, as well as in other environments, despite numerous medications.  (*Id.*).  He did acknowledge, however, that some counseling, as well as volunteer and interactive work, had been "very helpful."  Despite this, Dr. Black opined that, "[b]ecause of his situation and his medication, [Plaintiff] is

4

unemployable at this time in any environment either isolated or sedentary due to his PTSD." (*Id.*).

On August 6, 2014, at an appointment for a sinus infection, Plaintiff reported to Dr. Black that he had "been approved for his disability" and to see a psychiatrist for his PTSD.  (Tr. 437).  The same mental health medical history and medications were noted on Plaintiff's chart, with no modification, and again at a six month follow-up appointment on December 2, 2014. (Tr. 437, 439).  At that time, Plaintiff stated he exercised by walking, weight lifting, playing hockey twice a month and coaching daily.  (Tr. 439).

James Delamatre, Psychologist

On December 3, 2013, James Delamatre, Ph.D., a psychologist with the Louis Stokes Cleveland VA Medical Center, conducted an in-person examination of Plaintiff and completed a Disability Benefits Questionnaire, as related to his PTSD.   (Tr. 373-80).  Dr. Delamatre noted Plaintiff's diagnoses of traumatic brain injury and PTSD, and selected the following summary of Plaintiff's occupational and social impairment:

> Occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care and conversation.

(Tr. 374).  Notes indicated that he had difficulties communicating with others while previously working in sales, that work-related travel caused him anxiety which affected his ability to perform his job, and he was let go due to low sales.  (Tr. 376).  He reported that he did chores, helped with child care, coached high school hockey, took online courses, and intended to pursue a teaching degree in-class at a university.  (*Id.*).

Dr. Delamatre noted Plaintiff had medication prescribed by his primary care doctor for continued PTSD symptoms, but no other mental health treatment.  (*Id.*).  He checked-boxed that

Plaintiff experienced all the intrusion, avoidance, negative cognition and mood, and arousal and reactivity symptoms associated with PTSD, and that they cause Plaintiff "significant distress or impairment in social, occupational, or other important areas of functioning."  (Tr. 377-78). Specifically, Dr. Delamtre noted Plaintiff experienced depressed mood, anxiety, chronic sleep impairment, mild memory loss, disturbances of motivation and mood, difficulty establishing and maintaining effective work and social relationships, and difficulty adapting to stressful circumstances in work settings.  (Tr. 378).  Behavioral observations were generally normal, but with somewhat overactive psychomotor activity.  (Tr. 378-79).

Dr. Delamatre opined Plaintiff clearly had problems coping with situational demands of his sales work, specifically adapting to new environments, and initiating and maintaining effective relationships.  (Tr. 379).  However, he found that Plaintiff was generally able to cope well with quiet environments, familiar activities, and familiar people, and could likely succeed in that type of work environment.  (*Id.*).  Further, he noted Plaintiff would benefit from vocational rehabilitation and counseling.  (*Id.*).

Dr. Delamatre completed another Disability Benefits Questionnaire on May 14, 2014, after reviewing new evidence; specifically, two letters from Dr. Black, and a letter from his previous employer.  (Tr. 372-73).  One of Dr. Black's letters indicated "that he is employable on a limited scale" and the other "renders him unemployable and indicates that his situation can improve with counseling and medication," as well as a letter from Plaintiff's previous employer. (Tr. 371-73).  Dr. Delamatre noted that Dr. Black is a family physician with unknown expertise in mental health and vocational issues, and questioned the objectivity of Dr. Black's opinion. (Tr. 372-73).  Indeed, he remarked that Dr. Black's opinion seemed to be "solicitous advocacy," reasoning that during his original examination Plaintiff described fairly stable PTSD symptoms,

that there was good evidence in the record that his symptoms had been stable for years, and mild evidence that his symptoms had improved, making it "unlikely that the symptoms rapidly worsened over the last few months."  (Tr. 373).  Dr. Black further noted the letter from Plaintiff's previous employer merely indicated his PTSD symptoms were partly to blame for his leaving that job (and that Plaintiff's neck problems were also an issue), and provided no descriptions of problematic behaviors.  (*Id.*).

Plaintiff underwent a mental health evaluation through a county employee assistance program in June of 2014, with Martha Laska as his primary counselor.  (Tr. 409-12).  His mental health examination showed mostly normal and appropriate findings, although he was restless, agitated, and anxious.  (Tr. 416).   Case notes indicated Plaintiff struggled with new situations or strange places, crowds, could not drive by himself, and is unable to sleep without medication.  (Tr. 419).  Referencing the findings and specific language of Dr. Black and Dr. Delamatre, Ms. Laska found Plaintiff had significant PTSD symptoms that have a high moderate negative affect on his ability to gain and maintain full time competitive employment.  (Tr. 410-11).  However, although Ms. Laska acknowledged that his previous sales jobs were difficult for him due to intense requirements for interpersonal contact and high cognitive flexibility, she further determined the record showed he had positive vocational skills and was not precluded from all work.  (Tr. 411).  Ms. Laska provided a letter for Plaintiff dictating similar findings to Dr. Black's May 5, 2014 opinion, finding Plaintiff's PTSD symptoms disrupt his ability to focus and function in work environments due to impaired memory, problems meeting new people, and problems adjusting to changes in the work environment, and further noting he is unable to work in isolated and/or sedentary environments.  (Tr. 420).

State Agency Examining Consultant

Neuropsychologist Joshua Magleby, Ph.D., a state agency consultant, reviewed collateral information regarding Plaintiff, and formulated an opinion following an in-person examination on March 25, 2015. (Tr. 452-58). Dr. Magleby noted Plaintiff's past diagnoses of PTSD and anxiety, as well as a history of medication and counseling during 2012 through 2014. (Tr. 453). He further noted Plaintiff's report of past work as a sales associate, stating he "quit because [he] couldn't do it" and denied ever being fired. (Tr. 454). Plaintiff reported he is mostly capable with independent activities of daily living, including caring for his children, organizing the living environment, and maintaining a fairly normal daily routine. (*Id.*). Dr. Magleby found mild to moderate restrictions due to his psychiatric conditions (which was worse without medication), described by Plaintiff as being scared when out of his "safety zone." (*Id.*). Dr. Magleby determined Plaintiff had mostly fair coping skills with medication, no significant problem with adaptive behaviors and using public transportation, and exhibits appropriate social activities and a fair ability to get along with others. (*Id.*).

Dr. Magleby's mental status examination revealed generally normal findings, although Plaintiff reported moderate to severe symptoms of depression including sleep problems, irritability, feeling worthless, excessive anger, difficulty making decisions, and poor concentration. (Tr. 455-56). Plaintiff did not display overt signs of anxiety during the exam, but reported moderate to severe social phobic symptoms relating to his PTSD, with no claims of any other specific phobias, and no clinical symptoms of panic disorder. (Tr. 455). Dr. Magleby opined that Plaintiff's symptoms were chronic and static, and that his functional abilities were generally average, including memory, comprehension, and ability to follow instructions, although his ability to relate to others was likely impaired in certain situations (such as meeting

new people).  (Tr. 457-58).  Further, he opined Plaintiff's ability to withstand the mental stress and pressures of work "appear[ed] at least somewhat impaired" due to PTSD and irritability related to depression, evidenced by Plaintiff's complaints, psychiatric history, and current estimated adaptive behaviors.  (Tr. 458).

Dr. Magleby also completed a separate medical source statement on the same date he examined Plaintiff.  (Tr. 450).  Here, he wrote Plaintiff had some impairment in working memory, caused or exacerbated by PTSD, but no restrictions in his ability to understand or remember simple or complex instructions.  (*Id.*).  Further, Plaintiff had no restrictions in carrying out simple instructions, but moderate restrictions in carrying out complex instructions and making judgments on complex work-related decisions.  (Tr. *Id.*).  Dr. Magleby noted no marked or extreme functional limitations.  (*Id.*).

State Agency Reviewing Consultants

State agency reviewing consultant Cindy Matyi, Ph.D., determined Plaintiff had severe impairments of affective disorders and anxiety disorders, and compared his record to the listings, specifically listing 12.04 and 12.06.  (Tr. 74).  Under the "B" criteria, Dr. Matyi found Plaintiff had moderate impairments relating to activities of daily living, maintaining social functioning, and maintaining concentration, persistence, and pace, with no repeated episodes of decompensation.  (*Id.*).  She further opined the evidence did not establish the presence of "C" criteria for either listing.  (Tr. 74-75).  Dr. Matyi found Plaintiff's statement only partially credible, noting that, although he stated he could not learn a new job or remember ingredients to cook, he further reported he was able to handle finances and count change, drive independently, go out in public unaccompanied, and was able to complete online college coursework.  (Tr. 75). She opined that, despite having some moderate work-related restrictions, Plaintiff retained

significant functional capacity, and could:  (1) comprehend, remember, and carry out simple (1-2 step) instructions; (2) occasionally comprehend, remember, and carry out complex (3-4 step) instructions; (3) maintain attention, make simple decisions, and adequately adhere to a schedule, though would need some flexibility with time limits and production standards; (4) perform tasks in a static environment with few changes; and (5) relate adequately on a superficial basis in an environment that entailed infrequent public contact, minimal interaction with coworkers, and no over-the-shoulder supervisor scrutiny.  (Tr. 76-78).  These restrictions were generally affirmed by state agency reviewing psychologist Vicki Warren, Ph.D., on November 25, 2014.  (Tr. 95-97).

Following the hearing, the ALJ submitted interrogatories to Elissa Benedek, MD, a psychiatric medical expert, completed on April 19, 2015.  (Tr. 475-77).  Dr. Benedek check-marked that she reviewed the evidence furnished to her, and that the objective evidence was sufficient to form an opinion as to the nature and severity of Plaintiff's impairments.  (Tr. 475).  Dr. Benedek opined Plaintiff met the criteria of listing 12.06, specifically the "A" criteria under subsections 1, 2, 4, and 5, as well as subsections 1, 2, and 3 of the "B" criteria, since 2010.  (Tr. 476).  She stated her opinion was based on Exhibit 9F, noted as the report of Dr. Magleby's 2015 examination that described symptoms of PTSD, including flashbacks and intrusive memories of exposure to a life threatening occurrence.  (*Id.*).  The questionnaire included no other specific reference to the record.  (Tr. 475-77).

## C.  Hearing Testimony

Plaintiff testified he first experienced problems with anxiety affecting his work after he began a job as a police officer in September of 2001, noticing anxiety when in certain situations and when carrying a weapon.  (Tr. 51-52).  He stated he worked in sales relating to auto

dealerships until September 26, 2013, but quit because his psychological disability rendered him unable to perform the job, specifically that he could not make phone calls or talk to strange individuals, would get disoriented and experience anxiety when traveling to unfamiliar places, and was unable to learn new things that were presented to him.  (Tr. 43, 46-47, 52).  When asked if he is currently attending therapy, Plaintiff responded that he receives medication from his medical doctor, that he is on waiting lists for medical treatment through the VA, and was told by the local VA outpatient clinic that he could not obtain treatment for PTSD locally.

Plaintiff testified that during the day he generally stays at home, but will drive to pick his children up from school, and has no problems with personal care and hygiene. (Tr. 47-48). Plaintiff stated he participates in family activities "every once in awhile," and goes to the grocery store and restaurants with his family, but does not separate from his family when out.  (Tr. 48, 53).  Plaintiff indicated he is adversely affected by being around large crowds in the general public arena, but is comfortable when in small groups of familiar people.  (*Id.*).  Additionally, Plaintiff stated he reads online, and affirmed he has "quite a bit" of online computer skills, using it for information (with the following examples given by the ALJ:  medical information, therapy and counseling, social networking, and shopping).  (Tr. 49).  Plaintiff denied ever being admitted to an extended crisis intervention center or psychiatric facility.  (Tr. 49).

The ALJ advised Plaintiff that he would be sending out post-hearing medical interrogatories to a mental health specialist for purposes of obtaining a separate opinion as to whether or not Plaintiff meets or medically equals a listing.  (Tr. 49-51).  Plaintiff was informed at that time that responses to the interrogatories would be available online, and that he has a right to request another hearing or to respond to the interrogatories within seventeen days.  (Tr. 51).

### III. SUMMARY OF THE ALJ'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

2. The claimant has not engaged in substantial gainful activity since September 18, 2013, the alleged onset date.

3. The claimant has the following severe impairments:  posttraumatic stress disorder with anxiety and depression.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:  The claimant could perform low stress work, defined as low quotas.  Social interaction with the public, coworkers, and supervisors should be occasional.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on July 28, 1976 and was 37 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, since September 18, 2013, through the date of this decision.

(Tr. 16-30).

## IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## V. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.*

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all the evidence in the record in making its

decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI.  ANALYSIS

### A.  The Treating Source Analysis

It is well-established that the ALJ must afford special attention to findings of a claimant's treating source.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). This doctrine, known as the "treating source rule" reflects the Social Security Administration's awareness that physicians who have a long-standing treating relationship with an individual are best equipped to provide a complete picture of the individual's health and treatment history. *Id.*; 20 C.F.R. §§ 416.927(c)(2), 404.1527(c)(2). The treating source rule dictates that opinions from treating physicians are given controlling weight if the opinion is both "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and "consistent with the other substantial evidence in the case record." *Wilson*, 378 F.3d at 544.

When a treating source's opinion is not entitled to controlling weight, the ALJ is required to establish the weight given to the opinion by applying factors found in the governing regulations. 20 C.F.R. §§ 416.927(c)(1)-(6), 404.1527(c)(1)-(6). These factors include: (1) the examining relationship; (2) the treatment relationship; (3) the length of treatment and frequency of examination; (4) the opinion's supportability and consistency; (5) the source's specialization; and (6) any other factors tending to support or contradict the opinion. *Id*. However, the ALJ is not required to engage in an "exhaustive factor-by-factor analysis" when determining how much weight to accord to the treating source's opinion. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804-05 (6th Cir. 2011).  The regulations further require the ALJ to provide "good reasons" that are sufficiently specific to make clear to any subsequent reviewers the weight given to the

treating physician's opinions and the reasons for that weight. *See Wilson*, 378 F.3d at 544 (*quoting* S.S.R. 96-2p, 1996 WL 374188 at *5).

There is no merit to Plaintiff's argument that the ALJ did not appropriately apply the standard treating physician rule to the opinion of Dr. Black.  The ALJ acknowledged Dr. Black as a treating source, but found his opinion to be inconsistent with treatment notes and Plaintiff's daily activities, thus eliminating a requirement to give the opinion controlling weight.  (Tr. 21-22).  *See Wilson*, 378 F.3d at 544. The opinion makes clear that the ALJ considered the requisite factors:  the ALJ recognized Dr. Black as a family doctor and not a mental health specialist, and considered the examining and treating relationship in that he summarized the examination record with specific reference to each of the six treatment occasions between October 2013 and December 2014, further noting Dr. Black examined him only four times before completing the medical source statement.  (Tr. 21-22).  Significantly, the ALJ pointed out that Dr. Black administered a depression screening at his third appointment, but two of these four treatment sessions were for illness or injury unrelated to his mental health. (*Id.*).  The ALJ further noted Plaintiff's earliest treatment record with Dr. Black was from October 2013, one month after his alleged onset date, and no evidence existed showing his mental symptoms were discussed at that time, although he acknowledged depression and PTSD were listed as impairments, as were his prescriptions for Venlafaxine and Seroquel.  (Tr. 21).

The ALJ went on to give good reasons in support of his decision to afford "little weight" to the opinion of Dr. Black, specifically pointing to a multitude of inconsistencies and unsupported or contradictory statements.  (Tr. 21-22).  *See Wilson*, 378 F.3d at 544.  First, the ALJ found the extreme symptoms and limitations provided by Dr. Black in the medical source statement were not consistent with his treatment notes showing minimal treatment for mental

health-related symptoms, having previously noted a lack of notable findings from his depression screening in April of 2014.  (Tr. 21-22, 356-64).  The ALJ specifically took issue with Dr. Black's statements relating to Plaintiff's medications, finding his statement that Plaintiff took "numerous medications" exaggerated his actual treatment, and a lack of mention in the record of any medication side effects undermined his assertion that Plaintiff could not work in part because of these medications.  (Tr. 22).  Second, the ALJ considered that Dr. Black rendered his opinion after Plaintiff had informed him he required therapy and counseling three times per week, and that he had lost three jobs within a year due to his mental health symptoms, both statements of which were contradicted by Plaintiff's testimony and other records.  (Tr. 21-22, 236, 242, 358, 376).  Third, the ALJ found Plaintiff's reported activities, including playing and coaching hockey, volunteering, and interactive work for others with similar mental health issues, contradicted Dr. Black's opinion that Plaintiff is unemployable due to his PTSD.  (Tr. 21-22).  The ALJ additionally recognized that Dr. Black's opinion that Plaintiff was "unemployable" was an issue reserved for the Commissioner, and thus not entitled to deference.  *See Turner v. Comm'r of Soc. Sec.*, 381 Fed. App'x 488, 493 (6th Cir. 2010) ("When a treating physician…submits an opinion on an issue reserved for the Commissioner—such as whether the claimant is 'disabled' or 'unable to work'—the opinion is not entitled to any particular weight.") (*citing* 20 C.F.R. 404.1527(d)-(e); 416.927(d)-(e); Soc. Sec. Rule 96-5p, 61 Fed. Reg. 34471, 34474); *see Gaskin v. Comm'r of Soc. Sec.*, 280 F. App'x 472, 475 (6th Cir. 2008) (finding no error where the ALJ did not defer to the treating physician's opinion because that opinion addressed the claimant's ability to work, an issue reserved for the Commissioner, and was contradicted by numerous other pieces of evidence in the record).

16

Plaintiff also unsuccessfully contends that the ALJ inappropriately considered a potential bias in the opinion of Dr. Black, arguing this effectively created a new and improper "anti-treating physician rule."  (Pl. Brief p. 10).  The Northern District of Ohio has recognized that "[a] treating physician's opinion must always be viewed in conjunction with the rest of the medical record, because he may become sympathetic with the patient, and 'too quickly find disability.'" *Foutty v. Comm'r of Soc. Sec.*, No. 5:10CV551, 2011 WL 2532915, *8 (N.D. Ohio June 2, 2011) (*quoting Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008), *report and recommendation adopted*, 2011 WL 2532397 (N.D. Ohio June 24, 2011).  Here, the ALJ did not summarily reject the opinion of Dr. Black on the primary basis of potential bias, as suggested by Plaintiff.  Rather, the ALJ appropriately considered the possibility of bias *after* his extensive analysis of the evidence of record revealed inconsistencies and a lack of support for Dr. Black's opinion, as discussed above.  (Tr. 22); *see generally Foutty*, 2011 WL 2532915 at *8.  Accordingly, Plaintiff's argument that the ALJ did not properly address the opinion of his treating source, Dr. Black, is rejected, and the undersigned finds the ALJ's decision to give his opinion "little weight" is supported by the record.

**B.  Dr. Benedek/Duty to Recontact**

Despite Plaintiff's argument to the contrary, the ALJ also properly analyzed the opinion of Dr. Benedek, who opined Plaintiff met the requirements of Listing 12.06 since 2010. (Tr. 476).   Although the ALJ must consider the supportability, consistency, and specialization of the opinion of non-treating medical sources, "[t]he ALJ is not bound to accept the opinion or theory of any medical expert, but may weigh the evidence and draw his own inferences." *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. App'x 181, 194 (6th Cir. 2009); *White v. Comm'r of Soc. Sec.*, 970 F. Supp. 2d 733, 752 (N.D. Ohio 2013) (*citing Renfro v. Barnhart*, 30 F. App'x 431, 436

(6th Cir. 2002)); *see generally* *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (the ALJ reserves the right to decide pertinent issues, such as the claimant's RFC, based on her evaluation of the medical and non-medical evidence).  Here, the ALJ clearly considered the relevant factors in assigning "very little weight" to her opinion, citing directly to Dr. Benedek's extensive curriculum vitae, but noting she was neither an examining nor a treating source, and had never even met Plaintiff.  (Tr. 26, 459-67).  Although she checked the box indicating she had reviewed the entire record, the ALJ found Dr. Benedek did not provide sufficient support for her opinion:  first, she cited to only one report—that of Dr. Magelby's consultative examination—with minimal explanation; and second, Dr. Magelby's report showed only moderate limitations overall and did not support a finding that Listing 12.06 was met.  (Tr. 26, 449-58, 469-77).  Further, the ALJ reasoned that Dr. Benedek's statement that Plaintiff had met the listing requirements since 2010 was directly contradicted by the record showing he had worked until 2013, and noted that the record evidence did not date back prior to 2013.  (Tr. 26).

Plaintiff's argument that the ALJ had a duty to recontact Dr. Benedek for clarification is without merit.  An ALJ has a duty to recontact a *treating physician* where two conditions are met: (1) "the evidence does not support a treating source's opinion," and (2) the adjudicator cannot ascertain the basis of the opinion from the record." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 273 (6th Cir. 2010) (*citing* S.S.R. 96-5p, 1996 WL 374183 (July 2, 1996)).  Soc. Sec. Ruling 96-5p does not require an ALJ to recontact a treating doctor when the treating doctor's "opinion was deemed unpersuasive…because they were not corroborated by objective medical evidence…not because its bases were unclear." *Ferguson*, 628 F.3d at 271-75; *see also* *Poe*, 342 Fed. App'x at 156 n.3.  This duty does not apply here, as Dr. Benedek is not a treating source. *See generally* S.S.R. 96-5p, 1996 WL 374183 (providing a duty to recontact a *treating physician*

for clarification).   Further, even assuming *arguendo* that this rule extended to non-treating sources such as Dr. Benedek, as discussed above, the basis for her opinion is clear, and the ALJ thoroughly demonstrated that her opinion was not corroborated by the evidence of record.  (Tr. 26).  *See generally* S.S.R. 96-5p, 1996 WL 374183  ("If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record.")

The undersigned further finds no basis for Plaintiff's argument that the ALJ was required to give more weight to Dr. Benedek's opinion because she was the only reviewer who had access to the complete record.   An ALJ has discretion to determine that a doctor's opinion is not supported by the evidence.  *See Simpson*, 344 Fed. App'x at 194 ("'The ALJ is not bound to accept the opinion or theory of any medical expert, but may weigh the evidence and draw his own inferences.'" (*quoting McCain v. Dir., OWCP*, 58 F. App'x 184, 193 (6th Cir. 2003)); *see Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (An ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation."); *see also* 20 C.F.R. 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."); *see* 20 C.F.R. 416.927(e)(2)(i) and 404.1527(e)(2)(i) (directing that an ALJ is not bound by any findings made by any state agency program physicians or psychologists, including psychological consultants).  As discussed above, the ALJ provided good reasons, supported by the record, for discrediting the opinion of Dr. Benedek, and Plaintiff cites to no authority that would support his assertion that the ALJ must nonetheless give deference to her opinion.  Further, Plaintiff fails to point to any credible evidence

19

supporting Dr. Benedek's opinion that was not on the record at the times Dr. Matyi and Dr. Warren provided their opinions.[3]  (Tr. 74-78, 91, 95-97).

**Listing Analysis**

The third step of the disability evaluation process asks the ALJ to compare the claimant's impairments with an enumerated list of medical conditions found in the Listing of Impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See* 20 C.F.R. § 404.1520(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491 (6th Cir. 2010).  Each listing describes "the objective medical and other findings needed to satisfy the criteria of that listing."  20 C.F.R. § 404.1525(c)(3).  A claimant will be deemed disabled if his impairments meet or equal one of these listings.  In order to "meet" a listing, the claimant must satisfy all of the listing's requirements.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009).  However, if the claimant does not meet all of the listing's requirements, he may still be deemed disabled if his impairments "medically equal" the listing in question.  20 C.F.R. § 404.1526(b)(3).  To do so, the claimant must show that his impairments are "at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. § 404.1526(a).  At this step, it is the claimant's burden to provide evidence showing that she equals or meets the listing.  *Retka v. Comm'r of Soc. Sec.*, No. 94-2013, 1995 WL 697215, at *2 (6th Cir. Nov. 22, 1995) (*citing Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987)).

Here, Plaintiff argues the ALJ did not provide sufficient analysis when he determined Plaintiff did not meet or medically equal listing 12.06, anxiety disorders.  20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.06.  To establish an anxiety disorder, Plaintiff must prove, in part,

---

[3] The undersigned notes Plaintiff did not specifically object to the ALJ's analysis of the other consulting medical sources, namely reviewing consultants Dr. Matyi and Dr. Warren.  *See generally Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. App'x 411, 416 (6th Cir. 2011) ("[G]enerally arguments not raised are abandoned.").

that as a result of her mental condition, she suffers from at least two of the following conditions listed in Paragraph B of sections and 12.06:

1. Marked restrictions of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Sbpt. P, App. 1, §§ 12.04(B) and 12.06(B).  The Regulations provide that to establish a marked limitation in any of these areas, plaintiff must show that her impairment "seriously interfere[s] with the ability to function independently, appropriately and effectively." 20 C.F.R. § 404, Sbpt. P, App. 1; *Foster v. Bowen*, 853 F.2d 483, 491 (6th Cir. 1988).  Where a Plaintiff does not meet the B criteria, he may still meet the listing where he can alternatively show he meets the criteria of Paragraph C, by showing his anxiety disorder "[results] in a complete inability to function independently outside the area of one's home.  20 C.F.R. Pt. 404, Sbpt. P, App. 1, § 12.06(C).

Plaintiff fails to establish that the ALJ's step three analysis was insufficient.  The ALJ ruled that Plaintiff did not meet or medically equal listing 12.04 or 12.06 because Plaintiff met neither the B nor the C criteria, as required by the listings. (Tr. 17-18).  At step three, the ALJ found Plaintiff was only *mildly* restricted in activities of daily living; *moderately* limited in social functioning and concentration, persistence, or pace; and experienced no episodes of decompensation during the relevant period. (Tr. 18).  In support, the ALJ cited specific evidence from the record, including Plaintiff's ability to drive, care for a pet and his children (including picking them up from school), grocery shop, do laundry and perform yard work, read and find information online, and noted his previous work tasks and abilities performed until 2013.  (*Id.*).  Additionally, the ALJ noted Plaintiff is married, denied difficulty getting along with others, was

able to focus and concentrate to fully participate in the 48-minute social security hearing, and that he plays hockey and coaches high school students.  (*Id.*).

Although his articulation of his findings regarding Paragraph C is minimal, the ALJ's decision at step three is nonetheless sufficient and supported by substantial evidence.  A heightened articulation standard is not required at step three so long as the ALJ makes sufficiently clear the reasons for his listing determination, so as to allow meaningful review of his decision.  *See Marok v. Astrue*, No. 5:08-CV-1832, 2010 WL 2294056, at *3 (N.D. Ohio June 3, 2010) (*citing Bledsoe v. Barnhart*, No. 04–4531, 2006 WL 229795, at *411 (6th Cir. Jan. 31, 2006) (*citing Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1986)).  At step three, the ALJ cites to Plaintiff's disability determination documents in support of his statement that "the evidence fails to establish the presence of the 'paragraph C' criteria."  (Tr. 18, 65-82, 84-101).  This cited portion of the record included the opinions of Dr. Matyi and Dr. Warren that the evidence did not establish either B or C criteria, supported by their analysis of the evidence and determined mental RFC, and did not include contradictory evidence that would support a finding that Plaintiff, in fact, met the C criteria.  (*Id.*).  Further, the ALJ's analysis of the record evidence clearly demonstrates his basis for finding Plaintiff's anxiety-related symptoms did not render him completely incapable of functioning outside of his home, as demonstrated in his subsequent RFC analysis, which included recurring references to Plaintiff's activities of daily living and social functioning, and a lack of specialized treatment for his PTSD.  (Tr. 17-18); *see generally Grohoske v. Comm'r of Soc. Sec.*, No. 3:11 CV 410, 2012 WL 2931400, *3, n. 53 (N.D. Ohio July 18, 2012) (An ALJ's step three analysis may be sufficient where his discussion at step four "provide[s] sufficient evidence of [claimant's] impairments in light of the listing" and thus

"permit a court to conclude from other parts of the ALJ's opinion that the listings were not met.") (*citing Shea v. Astrue*, No. 1:11CV1076, 2012 WL 967088 (N.D. Ohio Feb. 13, 2012)).

Plaintiff additionally fails to meet his burden to show he meets or medically equals the listing.  *Retka*, 1995 WL 697215 at *2 (*citing Evans*, 820 F.2d at 164).  As discussed above, the ALJ properly analyzed and weighed the evidence of record, including the opinion of Dr. Benedek, and credited such evidence as he deemed appropriate.  (Tr. 17-28); *see generally Simpson*, 344 Fed. App'x at 194; *see generally Rudd*, 531 F. App'x at 728.  In challenging the ALJ's step three analysis, the Plaintiff fails to point to any evidence that was not considered by the ALJ in formulating his decision, nor to any objective or credible evidence that could establish that the requirements of the listing were met.

## VII. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the undersigned recommends that the decision of the Commissioner be AFFIRMED.


s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge


Date:  July 13, 2016.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1).  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).